**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| **UNDER ARMOUR, INC.** | ) | |
| 1020 Hull Street | ) | |
| Baltimore, Maryland 21230, | ) | CIVIL ACTION NO. |
| | ) | _____ |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL** |
| v. | ) | **DEMANDED** |
| | ) | |
| **NIKE, INC..** | ) | |
| One Bowerman Drive | ) | |
| Beaverton, Oregon 97005, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Under Armour, Inc. (referred to as "Under Armour" along with its predecessors

in interest and licensees), alleges as follows, upon actual knowledge with respect to itself and its

own acts, and upon information and belief as to all other matters:

**NATURE OF THE ACTION**

1.      This is a civil action for trademark infringement, trademark dilution, and unfair

competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and/or Maryland statutory and

common law.  Under Armour seeks equitable and monetary relief from Defendant's willful

violations of Under Armour's trademark rights in its famous I WILL trademark/tagline, which

Under Armour has extensively used and promoted in various ways, across multiple product lines,

services, campaigns, events, and materials.  Defendant—a direct and major competitor—has

launched an advertising campaign for its performance apparel, footwear, accessories, sporting

goods, and related services that appropriates "I WILL" prominently, repeatedly, and in a format

and context that imitates Under Armour's longstanding use of its iconic I WILL

trademark/tagline for these same types of products and services.  Defendant is well-aware of the source identifying power of taglines such as "I WILL."  For years, Defendant has used its own trademark tagline "JUST DO IT" and has aggressively enforced its rights in that phrase to prevent consumer confusion, dilution, and other irreparable injury to its trademark rights.  Here, Defendant's use of Under Armour's famous I WILL trademark/tagline likewise threatens the same injury to Under Armour and its famous and valuable commercial asset.  Defendant's use of I WILL infringes Under Armour's long-established trademark rights, dilutes the distinctiveness of Under Armour's famous mark, and constitutes unfair competition.

## PARTIES

2.      Plaintiff Under Armour is a Maryland corporation with a principal place of business at 1020 Hull Street, Baltimore, Maryland 21230.

3.      Defendant Nike, Inc. is an Oregon corporation with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  Because Under Armour is a citizen of the State of Maryland, Defendant is a citizen of the State of Oregon, and the matter in controversy exceeds $75,000 exclusive of interest and costs, the Court also has jurisdiction under 28 U.S.C. § 1332.  The Court has supplemental jurisdiction over Under Armour's state-law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of the same case or controversy.

5.     This Court has general personal jurisdiction over Defendant based on its continuous and systematic contacts with Maryland, including its sale of products through stores in Maryland and shipment of products into Maryland.

6.     This Court has specific personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting business in Maryland.  Defendant (directly or through authorized agents) disseminates advertising featuring the mark that is the subject of this lawsuit to consumers located in Maryland (including Baltimore).  Under Armour's claims arise, in part, out of Defendant's contacts with Maryland.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Under Armour's claims have occurred and are continuing to occur in this District and Under Armour's trademarks at issue are located in this District, where Under Armour maintains its principal place of business.

## UNDER ARMOUR AND ITS PRODUCTS AND SERVICES

8.     Under Armour is one of the world's most successful, popular, and well-known providers of performance apparel, footwear, accessories, sporting goods, and related goods and services.  Through its innovative use of advanced engineering and technology, Under Armour and its products have revolutionized the performance-product industry.  Under Armour's products are sold worldwide and are worn and used by athletes and individuals with active lifestyles, among others.  In 2012 alone, revenues from the sale of Under Armour products exceeded $1.8 billion.

9.     Under Armour promotes its products, services, and trademarks extensively through virtually every available type of digital, broadcast, and print media, including but not

limited to national, regional, and local print publications; billboards; signage; television; and the Internet.

10.     Under Armour also promotes and markets its marks and products and services through popular and highly trafficked social-networking websites, including FACEBOOK, PINTEREST, and TWITTER.  Under Armour's FACEBOOK page has received over a million "likes," showing FACEBOOK users' positive feedback in connection with Under Armour and its products and services.

### UNDER ARMOUR'S FAMOUS "I WILL" TRADEMARK/TAGLINE

11.     Since well before Defendant launched its "I WILL" campaign, Under Armour has continuously and extensively used and promoted the trademark tagline I WILL in connection with its business, products, and services in various ways.  As a result, the I WILL trademark has become famous as a succinct symbol of Under Armour's brand values and philosophy.  Under Armour's rights in the I WILL mark date back to at least as early as 1998.

12.     The I WILL mark has been featured in connection with hundreds of products, by either appearing in product names and/or on products themselves; product packaging; product labels; or product stickers.  The I WILL mark has also appeared on gift cards, on and in  retail stores and displays, and in advertising and other materials, such as billboards, stadium signage and displays, Internet banner ads, and the homepage of Under Armour's website at ua.com. (Representative examples shown below).

*Stadium LED Lighting*



*Television Billboard*
*(also used in blimps and in other ways)*



*Product Sticker*



*Billboard*



*Product Branding*



*Retail Store Signage*



*Product Branding*

 

*Screen Shots of Stadium Prompt and LED for MLB Games (similar versions used for various NCAA football and basketball games)*

*Screen Shot of Stadium Prompt and LED for NFL Games*

 

*Stadium Signage*

*Stadium Signage*

 

*Gift Card*

*Retail Bag*


*Retail Store Exterior*


*Retail Store Exterior Window Display*



*Retail Store Signage*

*Fixture at Super Bowl Event*

13.     Under Armour has also featured the I WILL trademark/tagline in television commercials and promotional videos showcasing amateur and professional athletes (including Olympic Gold Medal winner Michael Phelps and NBA superstar Brandon Jennings) engaging in sports training and athletic activities, peppered with prominent aural and visual uses of I WILL. A number of the videos conclude with the featured athlete in front of a large block-letter sign consisting of the words I WILL seemingly suspended in air, declaring "I WILL" while voices repeatedly chant "I WILL".















14. In 2012, Under Armour continued to highlight the I WILL trademark/tagline in various campaigns.

15. For example, Under Armour's "Sweat Every Day" campaign employed a nationally broadcasted television commercial featuring female athletes engaged in various training and athletic activities and ending with the following conspicuous use of I WILL.



16. Additionally, Under Armour's "What's Beautiful" campaign is an online multimedia experience that allows athletes across the country to declare a fitness goal and create their own profile page where they can share their progress and stories in an online community connected to the UNDER ARMOUR and I WILL brands. Over the course of several months, 10 initial winners were declared based on selections by Under Armour and the online community.

The "What's Beautiful" campaign uses and focuses on the I WILL trademark/tagline in various

ways, e.g.:





17.     Expanding on its prior campaigns featuring the I WILL mark, on February 12,

2013, Under Armour launched a global marketing campaign centered around the I WILL

trademark, including a new commercial that closes with the following image:



18.     Under Armour has spent substantial resources in connection with its various I WILL campaigns, which have received third-party and press attention, and which have been seen by millions of consumers nationwide, accounting for hundreds of millions of impressions.

19.     As illustrated by these examples, I WILL has become a focal point of Under Armour's advertising and a centerpiece of its brand identity.

20.     In addition, and as shown above, Under Armour has used the I WILL trademark/tagline in connection with its PROTECT THIS HOUSE mark, which Under Armour introduced in 2004 and has promoted extensively.

21.     Through repeated and extensive use standing on its own and in connection with Under Armour's PROTECT THIS HOUSE tagline, ⚍ logo, and UNDER ARMOUR trademark, the I WILL trademark/tagline has become famous as a succinct symbol of Under Armour's brand values and philosophy.

**UNDER ARMOUR'S TRADEMARK FILINGS FOR ITS I WILL MARK**

22.     In addition to its common-law rights, Under Armour owns the following valid and subsisting U.S. trademark registration and applications for the I WILL mark:

| Mark | Reg./App. No. | Reg./Filing Date | Products/Services |
|---|---|---|---|
| I WILL | 2409096 | 11/28/00 (Registered; incontestable) | Articles of clothing for men, women and children, namely, shirts, hats in Class 25 |
| I WILL | 85635291 | 5/25/12 (Filed) | Athletic footwear; athletic uniforms; baselayer bottoms; baselayer tops; beachwear; belts; bottoms; bras; capris; clothing, namely, athletic sleeves; dresses; footwear; foul weather gear; gloves; hats; headbands; headwear; hooded pullovers; hooded sweat shirts; jackets; jerseys; leggings; pants; polo shirts; rainwear; shirts; shorts; skirts; skorts; socks; sweat bands; t-shirts; tops; underwear; vests; visors; wristbands in Class 25 |

| Mark | Reg./App. No. | Reg./Filing Date | Products/Services |
|---|---|---|---|
| I WILL | 85628236 | 5/17/12 (Filed) | Mobile retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods; on-line retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods; retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods in Class 35 |
| I WILL | 85628185 | 5/17/12 (Filed) | Golf bags; bags specially adapted for sports equipment; golf gloves; batting gloves; football gloves; lacrosse gloves; football girdles; protective athletic cups; baseball bat bags; field hockey gloves; field hockey stick bags; lacrosse stick bags; running gloves; softball bat bags; baseball and softball equipment for catchers, namely, face masks, chest protectors, leg guards, protective knee supports, and replacement parts for the foregoing goods; athletic equipment, namely, mouth guards, guards for the lips, chin pads, knee pads, elbow pads, forearm pads, and shin guards; baseballs; basketballs; footballs; rugby balls; soccer balls; softballs; sport balls; volleyballs; lacrosse sticks; lacrosse stick heads; lacrosse stick shafts; lacrosse stick handles; lacrosse arm guards; lacrosse shoulder pads; lacrosse elbow pads in Class 28 |
| I WILL | 85627578 | 5/16/12 (Filed) | Football towels; golf towels; towels in Class 24 |
| I WILL | 85627519 | 5/16/12 (Filed) | Backpacks; briefcases; daypacks; duffel bags; hiking bags; hunting bags; messenger bags; sack packs, namely, drawstring bags used as backpacks; shoe bags for travel; sport bags; toiletry bags sold empty; tote bags; travel bags; umbrellas; wheeled bags; wristlet bags in Class 18 |
| I WILL | 85627412 | 5/16/12 (Filed) | Posters; stickers in Class 16 |

| Mark | Reg./App. No. | Reg./Filing Date | Products/Services |
|------|---------------|------------------|-------------------|
| I WILL | 85627366 | 5/16/12 (Filed) | Protective helmets for sports; eyewear; sunglasses; goggles for sports; visors for use with helmets; chin strap pads for use with protective helmets; chin straps for football helmets; magnetic coded gift cards; electronic gift cards; briefcases specially adapted for holding laptop computers; backpacks specially adapted for holding laptop computers; armbands specially adapted for holding mp3 players and cellular phones in Class 9 |

## DEFENDANT AND ITS WRONGFUL ACTS

23.     Beginning in late 2012, Defendant launched an advertising campaign that misappropriates Under Armour's iconic trademark/tagline by focusing on the phrase I WILL.

24.     On its FACEBOOK page, visited by many thousands of consumers, Defendant features a series of images such as the ones below, each prominently featuring the I WILL trademark/tagline, including one where I WILL is paired with "PROTECT MY HOME COURT"—"HOME COURT" being synonymous with "HOUSE"—thus evoking Under Armour's combined use of PROTECT THIS HOUSE and I WILL:

 

Defendant encourages visitors to "share" and disseminate these and other images through their own FACEBOOK pages, thus proliferating the unauthorized use of I WILL.

25.     Defendant's nike.com homepage, FACEBOOK page, and YouTube video page also feature a video in which, as in Under Armour's commercials and videos, amateur and professional athletes are shown engaging in various sports or training activities.  Throughout the

film, the I WILL trademark/tagline is repeatedly superimposed and emphasized by the use of

bold block letters and shown above various statements, e.g.:

 

 

 

 

 

 

 

26.     Defendant launched its campaign—anchored around the I WILL

trademark/tagline—with full knowledge of Under Armour's longstanding use of I WILL.

27.     Consumers have already associated Defendant's use of I WILL with Under

Armour.

## INJURY TO UNDER ARMOUR AND THE PUBLIC

28.     Defendant's unauthorized use of Under Armour's I WILL trademark/tagline is

likely to cause confusion, mistake, and deception as to the source or origin of Defendant and/or

its products, and is likely to falsely suggest a sponsorship, connection, or association of

Defendant, its products, its services, and/or its commercial activities with Under Armour.

29.     Defendant's unauthorized use of Under Armour's I WILL trademark/tagline has damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Under Armour and Under Armour's I WILL trademark/tagline.

30.     Defendant's unauthorized use of Under Armour's I WILL trademark/tagline has irreparably injured, and, if permitted to persist, will continue to irreparably injure the public, who has an interest in being free from confusion.

31.     Defendant's unauthorized use of Under Armour's I WILL trademark/tagline is likely to dilute the distinctiveness and value of Under Armour's famous I WILL trademark/tagline.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement Under**
**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

32.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 31 of this Complaint.

33.     Without Under Armour's consent, Defendant used and continues to use in commerce reproductions, copies, and colorable imitations of Under Armour's registered I WILL trademark/tagline in connection with the offering, distribution, and/or advertising of goods and services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement, False Designation**
**of Origin, Passing Off, and Unfair Competition**
**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

34.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 33 of this Complaint.

16

35.     Defendant's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant, its products, its services, and/or its commercial activities by or with Under Armour, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## THIRD CLAIM FOR RELIEF
### Trademark Dilution Under Section
### 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

36.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 35 of this Complaint.

37.     Under Armour's I WILL trademark/tagline is famous, as that term is used in 15 U.S.C. § 1125(c), and was famous before Defendant's first use of the I WILL trademark/tagline, based on, among other things, the inherent distinctiveness and federal registration of Under Armour's I WILL trademark/tagline and the extensive nationwide use, advertising, promotion, and recognition of that mark.

38.     Defendant's actions, as described above, are likely to dilute the distinctive quality of Under Armour's famous I WILL trademark/tagline by blurring in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

## FOURTH CLAIM FOR RELIEF
### Trademark Infringement Under
### Md. Code Bus. Reg. § 1-414 *et seq.*

39.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 38 of this Complaint.

40.     Defendant's use, without the consent of Under Armour, of a reproduction and/or colorable imitation of Under Armour's I WILL trademark/tagline in connection with the sale, offering for sale, and/or advertising of goods or services, is likely to cause confusion, or to deceive as to the origin of the goods or services, and thus constitutes trademark infringement in violation of Md. Code Bus. Reg. § 1-414 *et seq.*

## FIFTH CLAIM FOR RELIEF
### Trademark Infringement and Unfair Competition
### Under Maryland Common Law

41.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 40 of this Complaint.

42.     Defendant's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Under Armour, or as to the origin, sponsorship, or approval of Defendant, its products, its services, and its commercial activities by or with Under Armour such that Defendant's acts constitute infringement of Under Armour's proprietary rights in its I WILL mark, misappropriation of Under Armour's goodwill in that marks, and unfair competition under Maryland common law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Under Armour respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Under Armour respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     An Order declaring that Defendant's use of  I WILL infringes and dilutes Under Armour's I WILL mark, and constitutes unfair competition under federal and/or state law, as detailed above.

B.     A permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.     From using, registering, or seeking to register I WILL or any other marks, logos, designs, designations, or indicators that are confusingly similar to or dilutive of Under Armour's I WILL trademark/tagline in manners likely to cause confusion or dilution with Under Armour's I WILL trademark/tagline, including but not limited to in connection with any other wording or designs;

2.     From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant, are associated or connected in any way with Under Armour or sponsored by or affiliated with Under Armour in any way; and

3.     From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs B(1)-(2) above.

C.     An Order directing Defendant to destroy all products, packaging, signage, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain or bear the trademark/tagline or slogan I WILL or any other marks, logos, designs, designations, or indicators that are confusingly similar to or dilutive of Under Armour's I WILL trademark/tagline in accordance with 15 U.S.C. § 1118 and other applicable laws, including but not limited to Md. Code Bus. Reg. § 1-414 *et seq.*

D.      An Order requiring Defendant to disseminate pre-approved corrective advertising and send pre-approved letters to all customers, agents, and representatives to address the likely confusion and dilution caused from its use of Under Armour's I WILL trademark/tagline.

E.      An Order directing that, within thirty (30) days after the entry of the injunction, Defendant file with this Court and serve on Under Armour's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

F.      An Order requiring Defendant to account for and pay to Under Armour any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws, including but not limited to Md. Code Bus. Reg. § 1-414 *et seq.*

G.      An Order requiring Defendant to pay Under Armour damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws, including but not limited to Md. Code Bus. Reg. § 1-414 *et seq.*

H.      An Order requiring Defendant to pay Under Armour all of its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

I.      An Order requiring Defendant to pay Under Armour punitive damages for trademark infringement and unfair competition under Maryland common law.

J.      Other relief as the Court may deem appropriate.

Dated:  February 21, 2013

Respectfully submitted,

/s/ Douglas A. Rettew
Douglas A. Rettew (29815)
Robert D. Litowitz
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
Email: doug.rettew@finnegan.com
Email: rob.litowitz@finnegan.com

Attorneys for Plaintiff
Under Armour, Inc.